## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**RALPH SANDERS** and **FRANCIS**
**SANDERS** and **R.S.** by next friend
and parents **RALPH SANDERS** and
**FRANCIS SANDERS**,

        Plaintiffs,

        vs.                            No. **03cv0642 MCA/RHS**

**SANTA FE PUBLIC SCHOOLS,**
**TURQUOISE TRAIL ELEMENTARY**
**SCHOOL,** and **PATRICIA PENN,**
**JANIS DEVOTI, GLORIA BEST,**
**MAUREEN MCCARTHY, LOU RINGE,**
and **RICHARD ROYBAL**, individually
and in their official capacities,

        Defendants.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on *Defendants' Motion for Summary*

*Judgment Based on Standing* [Doc. 22], filed January 9, 2004. Having considered the

parties' submissions, the relevant law, and otherwise being fully advised in the premises, the

Court denies the motion.

## I. BACKGROUND

Plaintiffs in this action are Ralph and Francis Sanders (hereinafter Parents) and their

minor daughter, R.S.  R.S. has multiple disabilities, including Down Syndrome; a hearing

impairment; severe speech and language delays; and fine and gross motor delays.  [Doc. 1

at 4].  The Sanders family resides in Santa Fe, New Mexico.  [Id. at 2].

Defendants are the governmental entity known as Santa Fe Public Schools (SFPS); Turquoise Trail Elementary School (TTE), a charter school within the SFPS system; Patricia Penn, SFPS's Director of Special Education; Janice DeVoti, Principal of Pinon Elementary School (Pinon), a school within the SFPS system; Gloria Best, a special education teacher at TTE; Lou Ringe, SFPS's Director of Student Health; Maureen McCarthy, Principal of TTE; and Richard Roybal, SFPS's Assistant Division Head of Transportation.  [Doc. 1 at 3].

With the exception of the one-year period between October 1999 and October 2000,[1] R.S. has, since autumn 1998 until the present, attended schools that are part of the SFPS district.  [Doc. 1 at 4].  From August 1988 until May 1999, R.S. attended the E.J. Martinez Elementary School (EJM).  From October 2000 until May 2001, R.S. attended TTE.  From August 2001 until May 2002, R.S. attended Pinon.  [Id.].

In August 2001, Parents and Defendants devised an Individualized Education Program (IEP)[2] for R.S.'s 2001 to 2002 school year, which was finalized October 18, 2001.  [Doc. 23, Exh. A].  As required by law, Defendants subsequently sent Parents a "Written Notice of Proposed Actions," whereby Defendants proposed to continue the special education services provided R.S. by implementing the October 18, 2001 IEP.  [Id., Exh. B] By letter to the New

---

[1]  From October 1999 until October 2000, R.S. attended a private school.  [Doc. 1 at 4].

[2]  An IEP is a written statement that sets forth the child's present performance level, goals and objectives, specific services that will enable the child to meet those goals, and evaluation criteria and procedures to determine whether the child has met the goals. Assoc. for Comm. Living in Colorado v. Romer, 992 F.2d 1040, 1043 (10th Cir. 1993); see also 20 U.S.C. § 1401(11).

Mexico State Department of Education (SDE) dated October 24, 2001, Parents, believing that R.S.'s needs were not being sufficiently met, filed a formal complaint against SFPS and Pinon, thereby initiating the state complaint procedure contemplated by section 1415(b)(6) of the Individuals with Disabilities in Education Act (IDEA), 20 U.S.C. §§ 1401 *et seq.*, and section H of Title 6, Chapter 31, Part 2 of the New Mexico Administrative Code (NMAC). [Doc. 23, Exh. D].  Parents raised the following four issues that they believed impacted their daughter's educational progress and prevented her from receiving the free, appropriate public education (FAPE) to which children with disabilities are entitled under the IDEA: SFPS's failure to (1) meet R.S.'s specific medical and nutritional requirements; (2) include R.S. in "regular" classes; (3) provide R.S. with assistive technology to support her aptitude for computer skills; and (4) allow a presentation on the merits of allowing Daisy, R.S.'s trained assistance dog, to accompany R.S. in the classroom.  [Id.].

On December 14, 2001, while their complaint was pending with the SDE, Parents, through counsel, filed a request for an impartial due process hearing [3] on grounds that SFPS

_____

[3]  The pertinent subsection of the IDEA provides, in relevant part, that

> [w]henever a complaint has been received under subsection (b)(6) . . . of this section, the parents involved in such complaint shall have an opportunity for an impartial due process hearing, which shall be conducted by the State educational agency or by the local educational agency, as determined by State law or by the State educational agency.

20 U.S.C. § 1415(f)(1).

The correlative section of the NMAC states that

had (1) changed R.S's educational placement; (2) refused to initiate or change related services for R.S.; and (3) failed to provide R.S. with services necessary to a free, appropriate public education, in violation of state and federal education laws.  In their request, Parents reasserted the four issues they had raised in their state complaint and further alleged that SFPS had failed to (1) provide R.S. with physical, speech, and occupational therapy; (2) recognize R.S.'s hearing impairment and arrange for the use of an FM system as recommended by her examining audiologist; (3) develop fully an appropriate IEP for R.S.; and (4) provide R.S. with the same number of daily  instructional hours as her non-disabled peers.  [Doc. 23, Exh. G].  By letter dated February 20, 2002, counsel amended the December 14, 2001 request to raise additional claims and also to make various allegations of discrimination and retaliation in violation of the Rehabilitation Act of 1973, the Americans with Disabilities Act, and the First Amendment.  [Id., Exh. H].

On March 29, 2002, Impartial Due Process Hearing Officer (IHO) Lee H. Huntzinger

---

A parent or public agency may initiate an impartial due process hearing on the following matters:

(a)    the public agency proposes to initiate or change the identification, evaluation, or educational placement of the child or the provision of FAPE to the child;

(b)    the public agency refuses to initiate or change the identification, evaluation, or educational placement of the child or the provision of FAPE to the child . . . .

N.M. ADMIN. CODE TIT. 6.31.2 § I(3).

issued a *Ruling Regarding Scope of Hearing*, limiting the allowable claims to those for which subject-matter jurisdiction existed under the IDEA and permitting Parents to "introduce evidence and put forward claims for the time period of three calendar years prior to the date of filing their initial request for due process, December 14, 2001." [Doc. 16, Exh. 1 at 12].  The IHO rendered a *Final Decision & Order* on November 19, 2002.  [See generally Pltfs' Exh. 1; see also Doc. 16, Exh. 2 at 1].  As is relevant to the instant action, the Administrative Appeal Officer (AAO), on April 30, 2003, reversed the IHO's conclusion that the applicable statute of limitations under the IDEA is three years, holding instead that the IDEA implies  a limitations period of one school year.  The AAO thereafter dismissed as time-barred all claims other than those arising from disputes occurring during R.S.'s 2001 to 2002 school year.  [See Doc. 16, Exh. 2 at 29].

On May 28, 2003, Parents filed in this Court their *Appeal Under IDEA and Section 504 and Complaint for Damages and Injunctive Relief* (the Appeal/Complaint) against SFPS, TTE, and the individual Defendants named above.[4]  In the Appeal/Complaint, Parents allege that Defendants failed to provide R.S. with a free, appropriate public education, discriminated against R.S., and retaliated against Parents for having advocated on R.S.'s behalf, all in violation of the IDEA; section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a); Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131 *et seq.*, and the First Amendment via 42 U.S.C. §§ 1983 and 1988.  [Doc. 1 at 1-2].

---

[4] Penn, DeVoti, Best, Ringe, McCarthy, and Roybal are sued in both their individual and official capacities.  [Doc. 1 at 3].

5

To the extent Parents appeal from the AAO's statute-of-limitations determination, they argue that that determination is contrary to the weight of authority and that the AAO neglected to define what constitutes one school year.  [Doc. 1 at 16].  Parents further maintain that, as a result of her decision, the AAO (1) did not address their Section 504 claims, which were asserted within a three-year limitations period; (2) did not address their arguments that, assuming a one-year statute of limitations, their claims arising from events occurring during the spring of 1999 and the 2000 to 2001 school year were timely based on principles of equitable tolling and discovery; (3) reversed the IHO's determination that SFPS denied R.S. a free, appropriate public education during the second half of the 1998 to 1999 school year (January 1999 to May 1999) and the 2000 to 2001 school year; and (4) refused to consider several cross-appeal issues raised by Parents involving incidents occurring during the spring of 1999 and the 2000 to 2001 school year.  [Id. at 16-17].

Defendants now move for summary judgment based on standing on the ground that Parents have failed to exhaust their administrative remedies.  Defendants advance two arguments in support of their position.  [Docs. 22 and 23].  According to Defendants, the New Mexico regulatory scheme for bringing an action under the IDEA provides that complainants may either file a complaint with the SDE or request a due process hearing.  Defendants therefore first argue that Parents, having voluntarily elected initially to pursue their remedies by filing a state complaint with the SDE, lacked standing to request a due process hearing while their complaint was pending.  [Doc. 23 at 2].  For that reason, Defendants maintain that the IHO never had jurisdiction to entertain in a due process hearing

6

those issues that the Sanders had already raised in their state complaint.  [<u>Id.</u> at  9-12].

Defendants therefore ask this Court to remand to the SDE the four issues raised in Parents'

October 24, 2001 letter so that the agency may take final action. [<u>Id.</u> at 15].  Defendants next

argue that Parents lacked standing to request a due process hearing on all issues raised in

their December 14, 2001 request and their February 20, 2002 amendment because

Defendants were never provided prior written notice of those claims.  [<u>Id.</u> at 2, 12-14].

Parents reply that, rather than seriously contend that they have failed to exhaust,

Defendants are searching for a technical procedural default by Parents in hopes of blocking

Parents' access to federal court. [Doc. 65 at 2].  In response to Defendants' first argument,

Parents assert that Defendants failed to raise before the IHO or the AAO the issues now

raised, thus waiving the opportunity to challenge any procedural irregularities in the

administrative proceedings below.  [<u>Id.</u> at 2-3].  Parents also contend that no authority

supports the position that they were obligated to wait for the SDE to issue a decision on their

state complaint before filing a request for an impartial due process hearing.  [<u>Id.</u> at 3].  With

respect to Defendants' second argument, Parents insist that any pertinent notice requirements

under the IDEA and/or the NMAC apply to parents of children with disabilities, not school

districts, and that, in any event, Defendants had ample notice of the issues raised in Parents'

two requests for a due process hearing.  [<u>Id.</u> at 3].

## II. ANALYSIS

### A. Standard of Review: Fed.R.Civ.P. 56(c)

Summary judgment under Fed.R.Civ.P. 56(c) "shall be rendered forthwith if the

7

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading. . . ."  Fed.R.Civ.P. 56(e).  Rather, "the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial."  Id.   Judgment is appropriate as a matter of law if the nonmoving party has failed to make an adequate showing on an essential element of its case, as to which it has the burden of proof at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Lopez v. LeMaster, 172 F.3d 756, 759 (10th Cir. 1999).

In order to warrant consideration by the Court, the factual materials accompanying a motion for summary judgment must be admissible or usable at trial (although they do not necessarily need to be presented in a form admissible at trial).  See Chelates, 477 U.S. at 324. It is not the court's role, however, to weigh the evidence, assess the credibility of witnesses, or make factual findings in ruling on a motion for summary judgment.  Rather, the Court assumes the evidence of the non-moving party to be true, resolves all doubts against the moving party, construes all evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in the non-moving party's favor.  See Hunt v. Cromartie, 526 U.S. 541, 551-52 (1999).

**B. The Individuals with Disabilities in Education Act, 20 U.S.C. §§ 1401 *et seq.***

As an initial matter, the Court notes that, while Defendants have captioned their

8

motion *Defendants' Motion for Summary Judgment Based on Standing*, Defendants throughout their supporting memorandum use the terms "exhaustion of administrative remedies" and "standing" somewhat interchangeably.  [See, e.g., Doc. 23 at 4, 9, 11 (describing Parents as without standing to file requests for a due process hearing while their complaint was pending with the SDE)].  These two concepts are distinct.  As explained by the Tenth Circuit,

> [t]he purpose of the exhaustion rule is to permit agencies to exercise discretion and apply their expertise, to allow the complete development of the record before judicial review, to prevent parties from circumventing the procedures established by Congress, and to avoid unnecessary judicial decisions by giving the agency an opportunity to correct errors.

Urban by Urban v. Jefferson County Sch. Dist. R-1, 89 F.3d 720, 724 (10th Cir. 1996) (IDEA action).  Exhaustion of remedies under the IDEA is a creature of administrative law.  See id.

Standing, on the other hand, implicates federal-court jurisdiction and is the concept that prevents a federal court from reaching the merits of a case unless it first satisfies itself that the plaintiff is a proper party to bring the suit and that the issues raised are justiciable.  Glover River Org. v. U.S. Dep't of Interior, 675 F.2d 251, 253 (10th Cir. 1982).  "As an aspect of justiciability, the standing question is whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf.  Warth v. Seldin, 422 U.S. 490, 498-99 (1975) (*quoting* Baker v. Carr, 369 U.S. 186, 204

(1962)).  Standing, therefore, is a function of injury, causation, and redressability.  See D.L.

v. Unified Sch. Dist. #497, 270 F.Supp.2d 1217, 1253 (D.Kan. 2002).  Defendants do

not—nor could they—contend that Parents, as the mother and father of a minor child with

multiple physical and mental disabilities, lack standing under the IDEA.  See id. at 1254

(considering standing of adult with no legal relationship to child to request due process

hearing under IDEA and concluding that "the statute extends procedural safeguards only to

'parents'").  For that reason, the Court reads Defendants' motion as one for summary

judgment based on the Sanders's failure to exhaust administrative remedies and satisfy

applicable notice requirements.

## 1. Failure to Exhaust Administrative Remedies

The IDEA " was designed 'to ensure that all children with disabilities have available

to them a free appropriate public education [FAPE] that emphasizes special education and

related services designed to meet their unique needs.'" Cudjoe v. Indep. Sch. Dist. No. 12,

297 F.3d 1058, 1063-64 (10th Cir. 2002) (quoting 20 U.S.C. § 1400(d)(1)(A) (2000)).  To

guarantee that children with disabilities are wholly served by the IDEA, there exist a number

of procedural safeguards geared toward allowing parents and advocates to participate fully

in the design and implementation of a child's free, appropriate public education. Id. at 1064;

see also 20 U.S.C. § 1415, "Procedural Safeguards."  In exchange for the provision of these

many safeguards, however, "Congress required that parents turn first to the [IDEA's]

administrative framework to resolve any conflicts they ha[ve] with the school's educational

services." Cudjoe, 297 F.3d at 1064.  In other words, parents must first exhaust their

administrative remedies before seeking the assistance of the federal courts. See id. at 1064-65. The exhaustion requirement serves a number of purposes, such as (1) encouraging dissatisfied parents to turn first to educators, who are better versed than the courts in a child's educational needs; (2) permitting educational agency to correct their own mistakes; and (3) allowing for the development of technical issues and the creation of a factual record. See id. at 1065.

Subsection (l) of 20 U.S.C. § 1415 sets forth the IDEA's exhaustion requirement and provides, in pertinent part, that "before filing a civil action under [the Constitution, the ADA, the Rehabilitation Act, or other relevant federal laws] seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted . . . . 20 U.S.C. § 1415(l). Subsection (f) provides that "[w]henever a complaint has been received under subsection (b)(6) or (k) of this section, the parents involved in such complaint shall have an opportunity for an impartial due process hearing . . . ." 20 U.S.C. § 1415(f). Subsection (g) permits an appeal by any party aggrieved by the findings and decision rendered following a due process hearing. 20 U.S.C. § 1415(g). Subsection (b) sets forth the procedures guaranteed to parents of children with disabilities, with subpart (b)(6) providing parents "an opportunity to present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child . . . ." 20 U.S.C. § 1415(b)(6).[5] The

---

[5] Subsection (k), which is not relevant here, refers to the placement of a child with disabilities in an alternative educational setting. 20 U.S.C. § 1415(k).

NMAC similarly prescribes procedures to be followed by parents filing state complaints and/or requests for due process hearings.  See N.M. ADMIN. CODE TIT. 6.31.2 §§ (H), (I).

The crux of Defendants' first argument is that Parents, having first opted to proceed under 20 U.S.C § 1415(b)(6), could not, while their state complaint was pending before the SDE, "engage in mid-stream forum shopping" by also filing a request for an impartial due process hearing pursuant to subsection (f).  [See Doc. 23 at 10].  Defendants' argument is not convincing.  Indeed, a review of the text of the IDEA and the applicable provisions of the NMAC persuades the Court that the two statutory schemes clearly contemplate simultaneous state complaints and requests for due process hearings.

A memorandum issued by the Office of Special Education Programs describes the state complaint procedure and the due process hearing system as "two separate means available to [parents of children with disabilities] for resolving disputes with public agencies concerning the education of their children."  [See Pltfs' Exhs., Appx. A at 3].  Citing and referring to the *Code of Federal Regulations*, the memorandum goes on to explain that an issue that is the subject of a state complaint may also be the subject of a request for a due process hearing, and that a parent who has filed a state complaint that has not been resolved may also request a due process hearing.  [Id. at 5].  In such cases, "the State must set aside any part of the complaint that is being addressed in the due process hearing, until the conclusion of the hearing."  34 CFR § 300.661(c)(1) (2004).  Because the decision of an IHO following a due process hearing is final and binding, however, identical issues may not be raised first in a due process hearing and then reasserted in a state complaint.  See 34 CFR §

300.661(c)(2)(i) ("If an issue is raised in a complaint filed under this section that has previously been decided in a due process hearing involving the same parties [t]he hearing decision is binding . . . .").

In this case, Parents filed their state complaint on October 24, 2001. [Doc. 23, Exh. D]. On December 14, 2001, they filed a request for a due process hearing, which they then amended on February 20, 2002. [Id., Exhs. G, H]. As of December 14, 2001, the SDE had not yet resolved the state complaint. [See id., Exh. E, November 9, 2001 letter from Michael J. Davis, Superintendent of Public Instruction, State of New Mexico, Department of Education, to Ralph and Francis Sanders, Gloria Rendon, and Tricia Penn, explaining that SDE would issue a written report regarding Parents' complaint within 60 calendar days of its October 29, 2001 receipt of that complaint]. On or about November 20, 2002, however, the IHO entered a *Final Decision & Order*. [Pltfs' Exh. 1]. Because the IHO's decision is final and binding, the SDE has been divested of authority to consider any issues raised in both the state complaint and Parents' request for a due process hearing and already determined by the IHO. See 34 CFR § 300.661(c)(1), (2)(i). Accordingly, Defendants are not entitled to the relief they seek, to wit, remand to the SDE of the four claims raised in Parents' October 24, 2001 letter/complaint. [See Doc. 23 at 15]. As the weight of the authority does not support Defendants' argument with respect to Parents' failure to exhaust their administrative remedies, Defendants' motion for summary judgment on this ground is denied.

13

## 2. Failure to Provide Defendants with Prior Written Notice

Prior written notice is, along with the opportunity to present complaints and other practices, another type of procedural safeguard guaranteed under the IDEA to parents of children with disabilities.  20 U.S.C. § 1415(b)(3).  Specifically, prior written notice must be provided to parents whenever the school or other educational agency proposes to initiate or change, or

refuses to initiate or change, the identification, evaluation, or educational placement of a child, or the provision of a free, appropriate public education to that child.  Id.; 34 CFR § 300.503(a)(1).

Defendants assert that "[i]t is a well-settled principle that schools must be given adequate notice of problems if they are to remedy them or be held liable for their failure to act."  [Doc. 23 at 12].  The case cited by Defendants in support of this proposition states that "[s]chool boards must be given adequate notice of problems if they are to remedy them, and must be given sufficient time to respond to those problems before they can be held liable for failure to act."  Combs by Combs v. School Bd. of Rockingham County, 15 F.3d 357, 363-64 (4th Cir. 1994).  The Combs Court did not, however, address the issue raised by Defendants here; rather, that Court was charged with determining whether plaintiffs' initiation of a lawsuit over substandard school conditions was the catalyst that caused the school to remedy the situation such that plaintiffs could be deemed prevailing parties for purposes of recovering attorneys' fees.  Id.  The issue of notice was relevant only insofar as the Court concluded that the school probably would have responded to plaintiffs' concerns earlier had

14

it known of them.  Id. at 363.

Defendants have otherwise not directed the Court to any case standing for the proposition that the failure of parents to provide a school district with prior written notice of claims they intend to raise at a due process hearing bars those parents from later asserting their claims.  [See generally Doc. 23 at 12-14].  As was the case with Defendants' first argument, a review of the text of the IDEA, as well as a consideration of the policy behind the applicable notice requirements, persuade the Court that Defendants' argument on this point is not well taken.

Defendants contend that Parents' failure to notify them of any objections to IEPs preceding the IEP crafted for the 2001 to 2002 school year precludes Parents from now challenging in a due process hearing IEPs dating back as far as 1998. [See Doc. 23 at 15]. An IEP serves as the primary means of ensuring that a child with a disability has access to a free, appropriate public education to meet that child's unique needs.  Romer, 992 F.2d at 1042-43.  To protect each child's right to a free, appropriate public education, parents must have meaningful involvement in the child's educational programming, as well as an opportunity to seek review of decisions they believe to be inappropriate.  Id. at 1043.  To that end, "parents must receive prior written notice whenever the school district proposes to initiate or change, or refuses to initiate or change, 'the identification, evaluation, or educational placement of the child or the provision of a free appropriate public education to the child.'"  Id. (internal quotation omitted).

In light of the foregoing, the Court concludes that the requirement of prior written

notice serves to protect parents of disabled children, and that the benefits of such notice are intended to run to parents while the burdens are meant to be borne by school districts or other educational agencies.  See, e.g., 20 U.S.C. § 1400(d)(1)(B) ("The purposes of this chapter are . . . to ensure that the rights of children with disabilities and parents of such children are protected.").  Prior written notice that a school intends (or refuses) to alter a child's educational services allows parents an opportunity to participate and take an active role in directing the course of the child's educational development.  Such parental involvement, in turn, promotes the IDEA's goal of "[i]mproving educational results for children with disabilities[, which] is an essential element of our national policy of ensuring equality of opportunity, full participation, independent living, and economic self-sufficiency for individuals with disabilities."  20 U.S.C. § 1400(1).  The claims raised in Parents' two requests for due process will therefore not be dismissed for any failure by Parents to provide Defendants with prior written notice of their intention to assert those claims.

## III. CONCLUSION

For the reasons stated herein, *Defendants' Motion for Summary Judgment Based on Standing* [Doc. 22] is **DENIED**.

**IT IS, THEREFORE, ORDERED** that *Defendants' Motion for Summary Judgment Based on Standing* Is **DENIED**.

16

**SO ORDERED** this 29th day of September, 2004, in Albuquerque, New Mexico.


**M. CHRISTINA ARMIJO**
United States District Judge