IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**RALPH SANDERS** and **FRANCIS
SANDERS** and **R.S.** by next friend
and parents **RALPH SANDERS** and
**FRANCIS SANDERS**,

        Plaintiffs,

        vs.                        No. **03cv0642 MCA/RHS**

**SANTA FE PUBLIC SCHOOLS,
TURQUOISE TRAIL ELEMENTARY
SCHOOL,** and **PATRICIA PENN,
JANIS DEVOTI, GLORIA BEST,
MAUREEN McCARTHY, LOU RINGE,**
and **RICHARD ROYBAL**, individually
and in their official capacities,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiffs' *Motion for Summary
Judgment on Statute of Limitations for Individuals with Disabilities Education Act Claims*
[Doc. 14], filed November 24, 2003, and *Defendants' Cross-Motion for Summary Judgment
on the Statute of Limitations for Individuals with Disabilities Education Act Claims* [Doc.
26], filed January 22, 2004.  Having considered the parties' submissions, the relevant law,
and otherwise being fully advised in the premises, the Court grants Plaintiffs' motion and
denies Defendants' motion.

## I. BACKGROUND

        Plaintiffs in this action are Ralph and Francis Sanders (hereinafter Parents) and their

minor daughter, R.S.  R.S. has multiple disabilities, including Down Syndrome; a hearing impairment; severe speech and language delays; and fine and gross motor delays.  [Doc. 1 at 4].  The Sanders family resides in Santa Fe, New Mexico.  [Id. at 2].  Defendants are the governmental entity known as Santa Fe Public Schools (SFPS), various schools within the SFPS system, and various SFPS employees.  With the exception of the one-year period between October 1999 and October 2000 when she attended a private school, R.S. has, since autumn 1998 until the present, attended schools that are part of the SFPS district.  [Id. 1 at 4].

A more complete recitation of the factual background of this case is set forth in this Court's September 29, 2004 *Memorandum Order and Opinion* denying *Defendants' Motion for Summary Judgment Based on Standing*.  [See generally Doc. 73].  That factual background is considered herein for purposes of the pending motions and need not be repeated.  However, for purposes of the motions presently before the Court it should be noted that on December 14, 2001, Parents, through counsel, filed a request for an impartial due process hearing pursuant to § 1415(f)(1) of the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1401 *et seq.*, (IDEA)[1] on grounds that SFPS had (1) changed R.S's

---

[1] The pertinent subsection of the IDEA provides, in relevant part, that

> [w]henever a complaint has been received under subsection (b)(6) . . . of this section, the parents involved in such complaint shall have an opportunity for an impartial due process hearing, which shall be conducted by the State educational agency or by the local educational agency, as determined by State law or by the State educational agency.

educational placement; (2) refused to initiate or change related services for R.S.; and (3)

failed to provide R.S. with services necessary to a free, appropriate public education [FAPE],

in violation of state and federal education laws.  In their request, Parents reasserted the four

issues they had raised in a previous state complaint and further alleged that SFPS had failed

to (1) provide R.S. with physical, speech, and occupational therapy; (2) recognize R.S.'s

hearing impairment and arrange for the use of an FM system as recommended by her

examining audiologist; (3) develop fully an appropriate Individualized Education Program

(IEP)[2] for R.S.; and (4) provide R.S. with the same number of daily  instructional hours as

---

20 U.S.C. § 1415(f)(1).

     The correlative section of the New Mexico Administrative Code (NMAC) states that

> A parent or public agency may initiate an impartial due process
> hearing on the following matters:
>
> (a)    the public agency proposes to initiate or change the
> identification, evaluation, or educational placement of the child or
> the provision of FAPE [free appropriate public education] to the
> child;
>
> (b)    the public agency refuses to initiate or change the
> identification, evaluation, or educational placement of the child or
> the provision of FAPE to the child . . . .

N.M. ADMIN. CODE TIT. 6.31.2 § I(3).

    [2] An IEP is a written statement that sets forth the child's present performance level, goals
and objectives, specific services that will enable the child to meet those goals, and evaluation
criteria and procedures to determine whether the child has met the goals. Assoc. for Comm.
Living in Colorado v. Romer, 992 F.2d 1040, 1043 (10th Cir. 1993); see also 20 U.S.C.
§ 1401(11).

her non-disabled peers.  [Doc. 23, Exh. G].  By letter dated February 20, 2002, counsel amended the December 14, 2001 request to raise additional claims and also to make various allegations of discrimination and retaliation in violation of the Rehabilitation Act of 1973, the Americans with Disabilities Act, and the First Amendment.  [Id., Exh. H].

On March 29, 2002, Impartial Due Process Hearing Officer (IHO) Lee H. Huntzinger issued a *Ruling Regarding Scope of Hearing*, limiting the allowable claims to those for which subject-matter jurisdiction existed under the IDEA and permitting Parents to "introduce evidence and put forward claims for the time period of three calendar years prior to the date of filing their initial request for due process, December 14, 2001." [Doc. 16, Exh. 1 at 12].  Because the IDEA is silent as to the period during which IDEA claims may be brought, the IHO was called upon to, among other things, determine the applicable statute of limitations in this case.  [Id., Exh. 16 at 5].  Applying the "borrowing" test routinely employed when federal statutes do not specify a limitations period, the IHO determined that New Mexico's three-year personal-injury statute of limitations applied to Parents' claims, having found that the injury sustained by R.S. could "appropriately be termed an . . . injury to personal rights analogous to the injury to personal rights redressable under [42 U.S.C.] § 1983." [Id., Exh. 1 at 10].  The IHO rendered a *Final Decision & Order* on November 19, 2002.  [See generally Pltfs' Exh. 1; see also Doc. 16, Exh. 2 at 1].

On April 30, 2003, the Administrative Appeal Officer (AAO) reversed the IHO's conclusion that the applicable statute of limitations under the IDEA is three years, holding instead that the IDEA implies a limitations period of one school year.  [Doc. 16, Exh. 2 at

26].  The AAO stressed that "[t]he premise of the IDEA's administrative procedures is not the redress of past wrongs with damages."  [Id., Exh. 2 at 21].  Rather, these procedures are intended to provide prospective relief by facilitating the delivery of appropriate special education services to those children who need them.  [Id. at 22].  In light of this focus on prospective relief, the AAO reasoned that "[t]o characterize [the IDEA's administrative] process as analogous to a personal injury . . . , [an] action[] at law for damages, is a rather dramatic distortion of the legislation."  [Id. at 23].  The AAO then called R.S.'s case "an unambiguous example of the harm" caused when excessively long statutes of limitations and the judicially created remedy of compensatory education combine to distract IHOs, families, and school districts from the IDEA's intended goal of determining and defining the needs of a child with a disability and satisfying those needs as expeditiously as possible.  [Id.].

Given the unique character of the IDEA's procedural safeguards and administrative procedures, the AAO explained that she was unable to draw a parallel between an IDEA claim and a state cause of action and corresponding statute of limitations.  The AAO further pointed out that she was prevented from borrowing a state statute of limitations inconsistent with federal law or policy.  [Doc. 16, Exh. 2 at 24].  The AAO gave weight to the IEP as the core device of the IDEA's comprehensive statutory structure and the fact that the IDEA expressly demands that an appropriate, annually reviewable IEP be in effect at the beginning of each school year so as to guarantee a child with disabilities the free, appropriate public education to which that child is entitled.  [Id., Exh. 2 at 25].  Determining that these circumstances created the atypical situation where "a rule from elsewhere in federal law

clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking," DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 172 (1983), the AAO held that the IDEA implies a statute of limitations restricting due process requests to "no more than the current school year and its preceding summer."   [Doc. 16, Exh. 2 at 26].   The AAO thereafter dismissed as time-barred all claims other than those arising from disputes occurring during R.S.'s 2001 to 2002 school year.   [See id., Exh. 2 at 29].

On May 28, 2003, Plaintiffs filed their *Appeal Under IDEA and Section 504 and Complaint for Damages and Injunctive Relief.*  [Doc. 1].   The sole disputed issue raised in the cross-motions for summary judgment now before the Court is the applicable statute of limitations in IDEA actions.   [See Docs. 14, 26].   Parents urge the Court to apply New Mexico's three-year statute of limitations, N.M.S.A. § 37-1-8,[3] applicable to actions for personal injury, while Defendant argue that the applicable limitations period is either (1) the 30-day limitations period set forth in the New Mexico Administrative Procedures Act, or

---

[3]  § 37-1-8. Actions against sureties on fiduciary bonds; injuries to person or reputation

> Actions must be brought against sureties on official bonds and on bonds of guardians, conservators, personal representatives and persons acting in a fiduciary capacity, within two years after the liability of the principal or the person from whom they are sureties is finally established or determined by a judgment or decree of the court, and for an injury to the person or reputation of any person, within three years.

N.M. STAT. ANN. § 37-1-8 (1978).

(2) the 180-day limitations period set forth in the New Mexico Human Rights Act. [Doc. 16 at 7-17; Doc. 26 at 4]. Alternatively, Defendants ask this Court to affirm the decision of the AAO. [Doc. 26 at 4].

## II. ANALYSIS

### A. Standards of Review

Summary judgment under Fed.R.Civ.P. 56(c) "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading. . . ." Fed.R.Civ.P. 56(e). Rather, "the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." Id. Judgment is appropriate as a matter of law if the nonmoving party has failed to make an adequate showing on an essential element of its case, as to which it has the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Lopez v. LeMaster, 172 F.3d 756, 759 (10th Cir. 1999).

In order to warrant consideration by the Court, the factual materials accompanying a motion for summary judgment must be admissible or usable at trial (although they do not necessarily need to be presented in a form admissible at trial). See Celotex, 477 U.S. at 324. It is not the court's role, however, to weigh the evidence, assess the credibility of witnesses, or make factual findings in ruling on a motion for summary judgment. Rather, the Court

assumes the evidence of the non-moving party to be true, resolves all doubts against the

moving party, construes all evidence in the light most favorable to the non-moving party, and

draws all reasonable inferences in the non-moving party's favor.  See Hunt v. Cromartie, 526

U.S. 541, 551-52 (1999).  Cross-motions for summary judgment are to be treated separately

inasmuch as the denial of one does not require the Court to grant the other.  Buell Cabinet

Co., Inc. v. Sudduth, 608 F.2d 431, 433 (10th Cir. 1979).  Moreover, while the Court may

assume on cross-motions that no evidence other than that filed by the parties need be

considered, summary judgment is nevertheless inappropriate if disputes remain as to material

facts.  James Barlow Family Ltd. P'ship v. David M. Munson, Inc., 132 F.3d 1316, 1319

(10th Cir. 1997).

In the particular context of reviewing administrative decisions in IDEA cases, the

Court applies a *de novo* standard to questions of law.  O'Toole v. Olathe Dist. Sch. Unified

Sch. Dist. No. 233, 144 F.3d 692 (10th Cir. 1998); see also  P.N. v. Greco, 282 F.Supp.2d

221, 235 (D.N.J. 2003); Bristol Warren Regional School Committee v. Rhode Island Dep't

of Educ. and Secondary Educs., 253 F.Supp.2d 236, 240 (D.R.I. 2003).  Because the

question of the applicable statute of limitations in IDEA cases is one of law, the Court

reviews the AAO's conclusions *de novo.*  See id.; cf. Murray v. Montrose County Sch. Dist.

RE-1J, 51 F.3d 921, 927 (10th Cir. 1995) (adopting modified *de novo* standard of review to

administrative decisions requiring consideration of questions  of fact).

**B. The Individuals with Disabilities Education Act, 20 U.S.C. §§ 1401 *et seq.* (IDEA)**

### 1. Goals and Purposes

The IDEA, formerly known as the Education for the Handicapped Act (EHA), "was designed 'to ensure that all children with disabilities have available to them a free appropriate public education [FAPE] that emphasizes special education and related services designed to meet their unique needs.'" Cudjoe v. Indep. Sch. Dist. No. 12, 297 F.3d 1058, 1063-64 (10th Cir. 2002) (*quoting* 20 U.S.C. § 1400(d)(1)(A) (2000)); see also Romer, 992 F.2d 1040, 1042 n.1.  As the text of the IDEA explains, Congress had found that before enactment of the EHA (1) the special educational needs of children with disabilities were not being fully met; (2) more than one-half of the children with disabilities in the United States did not receive appropriate educational services that would enable those children to have full equality of opportunity; (3) 1,000,000 disabled children in the United States were excluded entirely from the public school system; (4) many children with disabilities throughout the United States participating in regular school programs were prevented by their disabilities from enjoying a successful educational experience because those disabilities were going undetected; and (5) because of inadequate services within the public school system, families were often forced — at their own expense — to find services outside that system and far from their homes.  20 U.S.C. § 1400(2).

Congress also found that "[i]mproving educational results for children with disabilities is an essential element of our national policy of ensuring equality of opportunity, full

participation, independent living, and economic self-sufficiency for individuals with disabilities."  20 U.S.C. § 1400(1).  As a result of its findings, Congress enacted the EHA pursuant to the enforcement clause of the Fourteenth Amendment "to ensure equal protection of the laws and to provide equal educational opportunity to all handicapped children."  56 FORDHAM L. REV. 725, 736  (1988).  Indeed, as one of the EHA's primary authors explained during Senate hearings :

> The Constitution provides that all people shall be treated equally, but we know that, while all youngsters have an equal right to education, those who live with handicaps have not been accorded this right. [The EHA] fulfills the promise of the Constitution that there shall be equality of education for all people, and that handicapped children no longer will be left out.

121 Cong. Rec. 37,413 (1975) (remarks of Sen. Harrison Williams).

The Tenth Circuit has stated that the IDEA's primary purpose "is 'to assure that all children with disabilities have available to them . . . a free appropriate public education which emphasizes special education and related services designed to meet their unique needs [and] to assure that the rights of children with disabilities and their parents or guardians are protected.'"  Padilla v. Sch. Dist. No. 1 in City and County of Denver, Colo., 233 F.3d 1268, 1270 (10th Cir. 2000) (*quoting* 20 U.S.C. § 1400(d)(1)(A)-(B)).  That full parental participation in the design and implementation of a child's free, appropriate public education is a prime objective of the IDEA is clear from cases in which courts have cited the IDEA's various procedural safeguards as evidence of congressional intent to ensure such participation.  See, e.g., Cudjoe, 297 F.3d at 1064 ("To ensure that children with disabilities

10

were being afforded all of the educational benefits of the statute, Congress mandated, among

other measures, a host of procedural safeguards, so that parents and advocates could

participate fully in the design and implementation of the child's FAPE.").  Discussing the

contours of judicial review of state compliance with the IDEA's procedural requirements,

the United States Supreme Court remarked that

> [i]t seems to us no exaggeration to say that Congress placed
> every bit as much emphasis upon compliance with procedures
> **giving parents and guardians a large measure of
> participation at every stage of the administrative process** []
> as it did upon the measurement of the resulting IEP against a
> substantive standard.

Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist., Westchester County v. Rowley, 458

U.S. 176, 205-206 (1982) (emphasis added).

The IDEA additionally envisions a collaborative effort by which parents, educators,

states, and others work together not just to create a personalized IEP through which the

individual child will receive the free, appropriate public education to which he or she is

entitled, but also to effect systemic change.  For example, the IDEA provides that a child's

IEP is to be developed, reviewed, and revised by an IEP "team" composed of, among others,

(1) the child's parents, (2) at least one regular education teacher and one special education

teacher or special education provider of the child, and (3) a representative of the local

educational agency.  20 U.S.C. § 1414(d)(1)-(4).  Moreover, among the express purposes of

the IDEA is

> to ensure that educators and parents have the necessary tools to
> improve educational results for children with disabilities by

11

> supporting systemic-change activities; coordinated research and
> personnel preparation; coordinated technical assistance,
> dissemination, and support; and technology development and
> media services; and [] to assess, and ensure the effectiveness of,
> efforts to educate children with disabilities.

20 U.S.C. § 1400(d)(3), (4).  Finally, the IDEA favors prompt resolution of disputes so as

"to expedite the provision of FAPE to children who may be at a formative stage of . . .

intellectual development."  Nieves-Marquez v. Puerto Rico, 353 F.3d 108, 116 (1st Cir.

2003) (citing Amann v. Town of Stow, 991 F.2d 929, 932 (1st Cir. 1993).

## 2. The Borrowing Process

The IDEA includes within its provisions no statute of limitations.  "When Congress

has not established a time limitation for a federal cause of action, the settled practice has

been to adopt a local time limitation as federal law if it is not inconsistent with federal law

or policy to do so."  Wilson v. Garcia, 471 U.S. 261, 266-267, 280-281 (1985) (holding that

42 U.S.C. § 1983 actions are best characterized as personal-injury actions).  This borrowing

process requires the court to engage in a three-step analysis.  Id. at 268.  First, the court must

consider whether state or federal law governs the characterization of the claim for limitations

purposes.  If federal law applies, the court must next decide whether all claims brought

pursuant to the particular statute in question should be characterized in the same way or

individually evaluated depending on the facts and legal theories presented.  Finally, the Court

must characterize the essence of the claim and determine which state statute provides the

most appropriate limiting principle.  Id.  The Supreme Court has stressed that "resort to state

law remains the norm for borrowing of limitations periods."  DelCostello, 462 U.S. at 171.

Nevertheless, a "closely circumscribed exception to the general rule" holds that the Court may decline to borrow a state statute of limitations "only when a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking." Reed v. United Transp. Union, 488 U.S. 319, 324 (1989) (*quoting* DelCostello, 462 U.S. at 172)).

The Tenth Circuit has not addressed the precise issue presented here, to wit, the limitations period that applies to the initial IDEA administrative due process hearing. The circuits that have considered the issue have not always taken a uniform approach. Indeed, as the Sixth Circuit has explained, Wilson's reasoning that "simple, broad characterization of all § 1983 claims best fits the statute's remedial purpose" does not apply to claims based on IDEA violations. Janzen v. Knox County Bd. of Educ., 790 F.2d 484, 487 (6th Cir. 1986) (*quoting* Wilson, 471 U.S. at 273). To the contrary, "the nature of actions that can be brought under [the IDEA] as well as the [IDEA's] goal of proper education of the handicapped child make the selection of state limitations periods on a case-by-case basis an imperative." Id. For that reason, "[each] individual case must be characterized by considering the facts, the circumstances, the posture of the case and the legal theories presented." Id.

The court in Janzen was required to determine whether parents were entitled under the EHA to reimbursement from their local school board for costs associated with educating their disabled son during the years 1978 through 1981. After considering five potentially

13

suitable limitations periods, the court held that Tennessee's three-year statute of limitations applicable to actions for money owed for services provided was the most appropriate.  Id. at 487, 489.  The court reasoned that a three-year limitations period was consistent with the EHA's goals of encouraging parental involvement in decisions relating to a disabled child's education and the prompt resolution of disputes.  Id. at 489.

Adherence to Janzen's case-by-case approach led the First Circuit to conclude that an IDEA claim for compensatory education based on the withholding of all special education services within a two-year period was akin to a civil rights action.  Murphy v. Timberlane Reg'l Sch. Dist., 22 F.3d 1186, 1192-93 (1st Cir. 1994).  Citing Wilson's "general preference for borrowing state limitations governing personal injury actions," the court held that New Hampshire's six-year "catch all" limitations period on personal actions, as set forth in N.H. Rev. Stat. § 508:4,[4] was the most appropriate limitation to be applied to the initiation of a request for an impartial due process hearing.  Id. at 1191, 1193 The court reasoned that, because the claim before it was based exclusively on a course of conduct already concluded, it did not present the same need for urgent administrative intervention that would exist "[f]or instance, where a party seeks administrative review in order to resolve an **ongoing** IEP impasse."  Id. at 1191 (emphasis in original).  In such a situation, explained the court, "the need for a speedy resolution securing the eligible child's IDEA entitlement at the earliest

_____

[4]  The pre-amendment N.H. Rev. Stat. § 508:4 deemed applicable by the First Circuit provides that "[e]xcept as otherwise provided by law, all personal actions, except actions for slander or libel, may be brought only within 6 years of the time the cause of action accrued." Murphy, 22 F.3d at 1192-93 (*quoting* N.H. Rev. Stat. § 508:4).

possible time must be considered a dominant IDEA policy objective." Id.

Manning v. Fairfax County Sch., 176 F.3d 235 (4th Cir. 1999) similarly required the court to determine the appropriate limitations period controlling the initial request for an IDEA due process hearing. Like the First Circuit, the Fourth Circuit held that the applicable statute of limitations was the "catch all" limitations period governing personal actions.[5] Manning, 176 F.3d at 238-239. The court had previously held that Va. Code Ann. § 8.01-248, entitled "Personal Actions for Which No Other Limitation is Specified" and providing for a one-year limitations period, applied to appeals from state agency IDEA actions. See Schimmel v. Spillane, 819 F.2d 477, 483 (4th Cir. 1987). Application in Manning of Virginia's personal-injury statute of limitations was not based on a determination that IDEA actions are akin to civil rights actions but, instead, on the court's conclusion that disputes in administrative IDEA proceedings were not so different in nature from those in judicial IDEA actions as to justify application of disparate limitations periods. Manning, 176 F.3d at 239.

Like the First Circuit, the Eighth Circuit has held that a civil rights action most closely resembles an IDEA claim. Strawn v. Missouri State Bd. of Educ., 210 F.3d 954, 957 (8th Cir. 2000). In Strawn, the court applied Missouri's two-year limitations period to an IDEA claim for compensatory education, since, in Missouri, civil rights actions are brought pursuant to the Missouri Human Rights Act. The court declined to apply Missouri's five-

---

[5] That "catch all" statute provides that "[e]very personal action, for which no limitations is otherwise prescribed, shall be brought within one year after the right to bring such action accrued." Manning, 176 F.3d at 238 (*quoting* Va. Code Ann. § 8.01-248 (1992 Repl.Vol.)).

year "catch all" statute of limitations on the ground that it would frustrate federal policy as embodied in the IDEA.[6]  Strawn, 210 F.3d at 957.  On the other hand, "[a] two-year limitation provides for relatively quick resolution of the claims so that important years of education are not lost. Two years is also not such a brief period that it undermines the IDEA policy of providing parents the opportunity to protect their disabled children's rights."  Id.

Shortly thereafter, however, the Eighth Circuit was faced with an appeal from a decision of the United States District Court for the Western District of Arkansas. Birmingham v. Omaha Sch. Dist., 220 F.3d 850 (8th Cir. 2000).  In Birmingham, the court held that Arkansas's three-year general personal-injury statute was most analogous to the IDEA.  Id. at 856.  Because, unlike Missouri, Arkansas had not codified a statute of limitations specifically for civil rights actions, the court concluded that it was free to look to principles developed in civil rights actions brought pursuant to 42 U.S.C. § 1983.  Id. at 855.  As it did in Strawn, the court accorded particular weight to the interests to be served by the IDEA, reasoning that

> [a] three-year limitations period does not violate IDEA policies. A three-year statute of limitations encourages parents to work with school officials to resolve disputes over the disabled child's education. It also allows parents time to prepare a federal lawsuit, and accounts for the time constraints faced by parents of disabled children.

Id. at 856.

---

[6]  While the court acknowledged that the First and Fourth Circuits had borrowed state personal-action "catch all" statutes of limitations, it refused to do so automatically where such a limitation period would frustrate federal policy.  Strawn, 210 F.3d at 957, n.5.

Having considered the approaches of the circuits that have addressed the issue, the goals and purposes of the IDEA, the IDEA's legislative history, and the particular facts and legal theories presented in the instant action, I conclude that New Mexico's three-year personal-injury statute of limitations is the most appropriate statute of limitations to apply in this case.  I am persuaded that an action brought pursuant to the IDEA is akin to one brought pursuant to 42 U.S.C. § 1983.[7]  See Murphy, 22 F.3d at 1193; Strawn, 210 F.3d at 957; Birmingham, 220 F.3d at 855.  As the IHO in this case reasoned following her analysis of Wilson v. Garcia, "[j]ust as the Civil Rights Act secures a unique, personal federal right, the [IDEA] grants to individual children with disabilities a personal, federal right to a free, appropriate public education."  [Doc. 16, Exh. 1 at 9].  This Court agrees, and adds that the IDEA further endeavors to create equal educational opportunities for an entire class of children historically excluded from those opportunities on the basis of disability and the limitations — both real and perceived — attendant to disability.  See 20 U.S.C. § 1400(c), (d).

To be sure, the legislative history of the EHA, the IDEA's predecessor, is replete with

---

[7] Defendants argue that the Tenth Circuit's holding in Padilla v. Sch. Dist. No. 1 —  that 42 U.S.C. § 1983 may not be used to remedy IDEA violations — means that "causes of action under § 1983 are [therefore] not sufficiently analogous to IDEA claims for purposes of borrowing statute [sic] of limitations."  [Doc. 21 at 20].  The Court agrees that the Tenth Circuit has held that § 1983 may not be used to remedy violations of the IDEA.  See Padilla, 233 F.3d at 1274.  However, the Court does not agree that this holding leads automatically to the conclusion that IDEA actions and actions for violations of civil rights are not sufficiently analogous for purposes of borrowing a statute of limitations.  Padilla dealt with the exclusivity of the IDEA and did not address the statute-of-limitations issue that now confronts this Court.  See Padilla, 233 F.3d at 1272-74.

examples supporting the conclusion that Congress had determined that the time had come "to assure equal protection of the laws and to provide to all handicapped children their right to education." 121 CONG. REC. 19,485 (1975). That passage of the EHA was intended to ensure educational equality is further made clear by the sponsors' comparison of the EHA to Brown v. Board of Education, wherein "[t]he Supreme Court of the United States fully opened the door for all children to be guaranteed equal educational opportunity."[8] Id. Indeed, Congress enacted the EHA pursuant to its authority under the Fourteenth Amendment. See Dellmuth v. Muth, 491 U.S. 223, 228 n.1 (1989). As with the Civil Rights Act, the EHA/IDEA's theme of equality "is reflected in the language of the Fourteenth Amendment[, which] unequivocally recognizes the equal status of every **person** subject to the jurisdiction of any of the several States." Wilson, 471 U.S. at 277 (emphasis in original). Moreover, where

> [t]he Constitution's command is that all "*persons*" shall be accorded the full privileges of citizenship; [and] no *person* shall be deprived of life, liberty, or property without due process of law or be denied the equal protection of the laws[, a] violation of that command is an injury to the individual rights of the person.

Id. (emphasis in original). Findings exist in the administrative record below that R.S. was denied her federal right to a free, appropriate public education. This type of deprivation is most analogous to sustaining a personal injury. For that reason, I conclude that New

---

[8] The EHA's sponsors cited *Brown* for the proposition that "[i]n these days, it is doubtful that any child may reasonably succeed in life if he is denied the opportunity of an education. Such an opportunity . . . is a right which must be made available to all on equal terms. 121 CONG. REC . 19,485 (1975) (*quoting* Brown v. Bd. of Educ., 347 U.S. 438, 493 (1954)).

Mexico's three-year personal-injury statute of limitations, N.M.S.A. § 37-1-8, applies to the initial request in this case for an impartial due process hearing under § 1415(f) of the IDEA.

This Court has considered but rejects Defendants' argument that a briefer period of either 30 or 180 days should apply so as to further the IDEA's goal of ensuring the prompt resolution of disputes.  [See Doc. 21 at 13-16].  As previously explained, prompt dispute resolution is but one goal of the IDEA.  The IDEA also seeks to (1) assure that all children with disabilities have available to them a free, appropriate public education specifically designed to meet their unique needs; (2) protect the rights of disabled children and their parents; and (3) foster a collaborative environment in which parents, educators, states, and others are encouraged to work together both to secure the education to which the disabled student is entitled and to effect systemic change.  I conclude that a 30- or 180-day limitation period would likely thwart these goals.  See Schimmel, 819 F.2d at 483 (refusing to elevate interest in prompt resolution of disputes over other federal policies to be served by the IDEA, which policies would be undermined by the application of a limitations period of less than one year); see also Janzen, 790 F.2d at 587 (explaining that shorter limitations periods are more likely to discourage parents from cooperating and working with schools to meet a disabled child's educational needs).  By contrast,

> [a] three-year limitations period does not violate IDEA policies. A three-year statute of limitations encourages parents to work with school officials to resolve disputes over the disabled child's education.  It also allows parents time to prepare a federal lawsuit, and accounts for the time constraints faced by parents of disabled children.

19

Birmingham, 220 F.3d at 856.

Finally, this Court has considered the AAO's application of an implied limitations period of one school year, as well as the stated reasoning therefor.  [See Doc. 16, Exh. 2 at 26].  As previously explained, the AAO concluded that it was unnecessary to borrow a state statute of limitations because this case presents "one of those rare circumstances 'when a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes . . . .'" [Doc. 16, Exh. 2 at 26 (quoting DelCostello, 462 U.S. at 172)].  The Court disagrees, having already determined that R.S.'s denial of educational services to which she was entitled under the IDEA is likened to a personal injury.  That compensatory educational services may be awarded as a remedy for services denied suggests that the IDEA contemplates not just prospective relief but also a measure of redress for past wrongs or injuries.  See, e.g., Murphy, 22 F.3d at 1191.  New Mexico specifically provides a three-year period of limitation in which to bring actions "for an injury to the person."  N.M. STAT. ANN. § 37-1-8 (1978). After considering the nature of R.S.'s deprivation, the various goals to be served by the IDEA, and the United States Supreme Court's pronouncement that "resort to state law remains the norm for borrowing of limitations periods[,]"  DelCostello, 462 U.S. at 171, I conclude that the appropriate limitations period is three years.

### III. CONCLUSION

For the reasons stated herein, Plaintiffs' *Motion for Summary Judgment on Statute of Limitations for Individuals with Disabilities Education Act Claims* [Doc. 14] is **GRANTED** and *Defendants' Cross-Motion for Summary Judgment on the Statute of Limitations for*

*Individuals with Disabilities Education Act Claims* [Doc. 26] is **DENIED**.

**IT IS, THEREFORE, ORDERED** that Plaintiffs' *Motion for Summary Judgment on Statute of Limitations for Individuals with Disabilities Education Act Claims* is **GRANTED**.

**IT IS FURTHER ORDERED** that *Defendants' Cross-Motion for Summary Judgment on the Statute of Limitations for Individuals with Disabilities Education Act Claims* is **DENIED**.

**SO ORDERED** this 3rd day of November, 2004, in Albuquerque, New Mexico.

**M. CHRISTINA ARMIJO**
United States District Judge